**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

SAMUEL JAMES HERRERA,

    Plaintiff,

v.

ZILLOW GROUP,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff Samuel James Herrera, through his attorneys, Diane S. King and Marianna McLean of King Employment Law, for his Complaint and Jury Demand against Defendant Zillow Group (Zillow), alleges as follows:

**INTRODUCTION**

Zillow gladly reaped the fruits of Mr. Herrera's hard work and sales success for years but would not countenance a Hispanic man in its mostly White upper echelons. When Mr. Herrera's superb sales propelled him to the Director level, Zillow halted his climb up the corporate ladder by denying him further promotional and earning opportunities in favor of less qualified White employees.

When Mr. Herrera complained about race discrimination, Zillow mounted a retaliation campaign culminating in Mr. Herrera's pretextual termination. Consequently, Mr. Herrera brings race discrimination and retaliation claims under Section 1981, Title VII of the Civil Rights Act, and the Colorado Anti-Discrimination Act.

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States of America, including Article III, Section 1 of the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331 & 1343, and 42 U.S.C. § 1988, as amended by the Civil Rights Attorney Fee Award Act of 1976, and 28 U.S.C. § 1367.

2. Plaintiff brings this action pursuant to Section 1981, 42 U.S.C § 1981, Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. §§ 24-34-401.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all events giving rise to the claims asserted herein occurred in the District of Colorado of the United States of America.

4. Plaintiff has met all procedural prerequisites for filing this suit by timely filing a Charge of Discrimination alleging race discrimination and retaliation against Zillow with the Colorado Civil Rights Division ("CCRD").

5. The CCRD granted Mr. Herrera a right to sue on June 25, 2025

6. Mr. Herrera has filed this Complaint within ninety days of receiving a Notice of Right to Sue from the CCRD.

## PARTIES

7. Plaintiff Herrera is a Hispanic individual who currently is, and at all times relevant to this action has been, a citizen of the United States of America and a resident of the State of Colorado.

8. Defendant Zillow is headquartered in Seattle, Washington.

9. At all times relevant to this action, Zillow employed at least 15 employees.

## FACTUAL ALLEGATIONS

**A. Mr. Herrera's Stellar Performance Earns Him Promotions and Praise.**

10. Mr. Herrera was a day-one Zillow employee. He dedicated fourteen years of his professional life to Zillow, moving across the country from Seattle to New York City, and most recently to Denver, traveling, at times, up to 150 days per year.

11. Mr. Herrera's stellar performance earned him rapid growth at Zillow, from Sales consultant in 2010 to General Manager (GM) of Rentals, Eastern Region, in 2022.

12. Mr. Herrera was promoted seven times during his fourteen-year career at Zillow and had been managing employees for approximately nine of those years.

13. As GM, Mr. Herrera regularly exceeded his sales goals and consistently earned "Successful" and "Exceptional" ratings.

14. In 2023, ***Mr. Herrera exceeded his average attainment goal by achieving 143.9%,*** earning the "exceeded expectations" rating, and successfully leading a sales team of approximately 40 employees.

15. In the year prior to Mr. Herrera's termination, Zillow executives repeatedly praised Mr. Herrera's performance as "impactful," "world-class," and producing "amazing results."

16. Throughout his Zillow employment, Mr. Herrera had no disciplinary history until the end of 2023, when Zillow grew tired of Mr. Herrera's complaints about race discrimination and decided to force him out of the company.

3

**B. To Bar a Hispanic From Reaching its Upper Echelons, Zillow Denies Mr. Herrera Promotional Opportunities and Merit Pay.**

17. Once Mr. Herrera reached the GM level, Zillow decided to bar his further elevation and limit his earnings opportunities, exemplified by the following.

18. In February 2024, Zillow:

- denied Mr. Herrera a merit pay increase and restricted stock units ("RSUs"), even though he handily surpassed his 2023 sales goals, but

- awarded Melanie McAuley, a Caucasian employee who did not meet her sales goals, a 2.75% merit increase and RSUs.

19. In March or April 2024, Mr. Herrera's supervisor, Senior Sales Director Shain Jordan:

- refused to consider promoting Mr. Herrera to head the larger Rentals team, ostensibly because of his indefinite Performance Improvement Plan (PIP; explained below), *but*

- promoted Mr. Herrera's Caucasian peer and competitor for future promotions, Katelyn Felt, who had significantly less experience in Rentals.

20. In March 2022 and March 2024:

- Mr. Herrera sought guidance from Roberts, VP of Group Sales, Jamie Thomas, and Jordan about the newly opened position for Director of Small Teams in Zillow Rentals, for which he was amply qualified.

- All three discouraged Mr. Herrera from applying, telling him that the role required someone with a "higher business acumen."

4

- Zillow hired less qualified White employees, such as Sean Lee and Jennifer Maul, in almost all the open leadership positions.

**C. Mr. Herrera's Complaints About Race Discrimination Result in Retaliation and Intensified Discrimination.**

21. In 2023 and 2024, Mr. Herrera attempted to educate Zillow HR and Jordan to Zillow's discriminatory work environment, with no success.

   a. *The early 2022 race-based hostile work environment complaint*

22. Mr. Herrera first complained about Zillow's race-based hostile work environment in 2022, after becoming GM.

23. Mr. Herrera complained that his Caucasian peer and competitor for the next Director position, Katelyn Felt, encouraged her subordinates to complain unfairly about Mr. Herrera.

24. Other Hispanic employees, such as Scott Brozena, Jesus Gonzales, and Jason Avalos, felt similarly targeted by Felt.

25. When Mr. Herrera complained to Jordan and Thomas about Felt's discriminatory behavior ("she doesn't like working with Mexicans") and that she was using other white female colleagues like Britt Boyer and Brooke Caughran to undermine his career, Jordan dismissed Mr. Herrera's concern by stating, "perception is reality."

26. Zillow did not investigate Mr. Herrera's race discrimination complaint.

   b. *Based on false allegations of a terminated employee, Zillow launches an unprecedentedly broad investigation of Mr. Herrera but ignores numerous sex harassment complaints against White executives.*

27. In September 2023, on Mr. Herrera's recommendation and the approval of Jordan, Thomas, and HR, Zillow terminated Senior Business Consultant Matt

5

Dominguez for fraud and breach of the duty of loyalty.

28. The day after his termination, Dominguez accused Mr. Herrera and other leaders of discrimination and other misconduct in a mass email to the Eastern Sales Region.

29. Thomas assured Mr. Herrera that she knew he would never discriminate against a colleague and that this sort of investigation was typical.

30. Although Zillow claimed to have hired an independent investigator, its internal Employee Relations Investigation Manager, Kari Koehn, partially led the investigation.

31. Although Zillow typically limits its investigations to the complaint allegations, it broadened its investigation of Mr. Herrera, soliciting feedback beyond Dominguez's complaints.

32. In contrast, upon information and belief, Zillow ignored or perfunctorily investigated multiple sex harassment complaints against Caucasian executives, including Zillow CEO Jeremy Wacksman and Mr. Herrera's supervisor Jordan.

33. Not only did Wacksman and Jordan avoid serious consequences, but Jordan was promoted amidst such complaints in 2019.

34. Zillow did not investigate Ms. Herrera's White peers, like Felt or Ken Hoffmann, when others complained of their misconduct.

35. Zillow weaponized Dominguez's complaint to oust Mr. Herrera from the company.

    c. *Ultimately lacking grounds for termination, Zillow attempts to force Mr. Herrera's resignation.*

36. In October 2023, Jordan, Thomas, and HR's Clair Wood shared with Mr. Herrera that the investigation cleared him of sex harassment and discrimination charges.

37. Nevertheless, Jordan and Thomas's feedback to Mr. Herrera was filled with stereotypes about Hispanic men, such as:

- Mr. Herrera's colleagues <u>perceived</u> him as condescending for using the phrase "make sense?"
- Complainants claimed *witnessing (not experiencing)* Mr. Herrera's:
  - reciprocating a hug and a European kiss on the cheek, commonplace at Zillow;
  - telling a colleague that she and his wife had similar hair color, and
  - asking a woman to take notes in a meeting.

38. Mr. Herrera responded to Jordan, Thomas, and Wood that:

- Thomas herself, as well as Mr. Herrera's former Zillow mentor, had coached him to use the phrase "make sense?";
- Jordan and other leaders frequently use the same phrase;
- he would stop greeting colleagues with hugs or European kisses, and
- he rotated note-taking assignments, including himself in the rotation.

39. Despite clearing Mr. Herrera of the sex harassment and other wrongdoing, Jordan and HR presented him with two choices: (1) resign with a small severance package or (2) accept a PIP designed for failure.

40. Knowing he had done nothing wrong, Mr. Herrera elected to remain at Zillow and let his stellar work ethic and sales speak for themselves.

41. The PIP, which Mr. Herrera was ordered to write himself, was based on vague, subjective, and difficult-to-measure criteria, such as improving culture and morale and compliance with SMART goals that lack specific benchmarks relevant to Mr. Herrera's performance.

42. Upon information and belief, Zillow had never ordered another employee to write their own PIP.

43. Zillow did not limit Mr. Herrera's PIP temporally, making it indefinite.

   d. *Mr. Herrera's December 2023 complaint about a race-based double standard.*

44. In the weeks following Mr. Herrera's PIP placement, Mr. Herrera observed his White colleagues engaging with impunity in the same behaviors for which Zillow had punished him:

   - Jane Porter suffered no consequences for hugging and kissing Mr. Herrera on the cheek at a Z-retreat in December 2023, and

   - Jordan, Scott Clark, Curt Beardsley, and others avoided consequences for sexual misconduct complaints.

45. Therefore, on December 11, 2023, Mr. Herrera complained to HR about a race-based double standard, pointing out that Zillow investigated a complaint about him but not about White executives.

46. Unlike Zillow's investigation of the complaints *against* Mr. Herrera, Wood dispatched the complaint *by* Mr. Herrera in only a few days.

47. Wood classified all of Mr. Herrera's concerns as **"petty annoyances, isolated incidents, and casual conversations"** and asked Mr. Herrera to stop documenting these issues.

48. Upon information and belief, Wood did not interview anyone during this investigation.

**D. Zillow Finally Ousts Mr. Herrera for a Pretextual Reason.**

49. Starting in 2024, Zillow intensified its efforts to oust Mr. Herrera.

   a. *Zillow assigns Mr. Herrera to a struggling team.*

50. In February 2024, Zillow assigned Mr. Herrera to the struggling "suspension effort" – collecting overdue payments and managing accounts placed in suspension.

51. Jordan – who previously spearheaded the project – admitted to "drowning" with the project.

52. Exacerbating Mr. Herrera's challenges, Felt, with Jordan's approval, poached Mr. Herrera's most experienced manager on his sales team.

   b. *Striving to turn around the struggling suspension project, Mr. Herrera seeks counsel from a suspension specialist.*

53. To diagnose the reasons for the suspension project's past failures and plan a turnaround, Mr. Herrera decided to seek counsel from Joe Maskovich, a nine-year Zillow employee, recognized for his expertise in suspensions.

54. In February 2024, Mr. Herrera obtained Jordan's approval to expense a dinner with Maskovich.

55. Jordan considered dinner with Maskovich a "splendid idea."

56. Mr. Herrera also informed Thomas about taking Maskovich to a "nice place";

Thomas agreed it was a "smart" plan.

57. The discussion between Maskovich and Mr. Herrera on February 6, 2024, lasted about five hours, resulting in a $724.70 check.

58. Although high, the check was not extraordinary for Zillow working dinners: in May 2022, Jordan expensed a dinner with three Zillow executives, including Mr. Herrera, for which the check totaled over $1,000.

59. Following the dinner, in late March, Mr. Herrera submitted the $724.70 expense report under "morale-meals" that covered the five-hour dinner.

    c. *Understanding the true motive behind the assignment, Mr. Herrera complains to Jordan about retaliation.*

60. On March 2, 2024, Mr. Herrera complained about retaliation stemming from his discrimination complaints.

61. Specifically, Mr. Herrera complained to Jordan that Zillow had:

- passed him over for leadership roles;
- withheld appropriate support for underperforming managers; and
- held Mr. Herrera to different standards from his Caucasian peer Felt.

62. Upon information and belief, Zillow did not investigate Mr. Herrera's complaint.

    d. *Jordan uses the dinner check as a pretext to terminate Mr. Herrera's employment.*

63. On April 12, 2024, **several weeks after Mr. Herrera submitted the expense report and five weeks after Mr. Herrera's retaliation complaint,** Jordan questioned Mr. Herrera's expense report. This was the first time that Mr. Herrera's

expense report had ever been questioned by Zillow.

64. Mr. Herrera explained the necessity of the hours-long dinner resulting in the high check. The following day, Jordan terminated Mr. Herrera's employment, citing Mr. Herrera's violation of Zillow's Travel and Expense Policy.

65. Zillow's Travel and Expense Policy did not apply to the Maskovich meal.

66. The Maskovich dinner would have been an appropriate expenditure for Mr. Herrera's discretionary budget for business expenses benefiting Zillow, his "morale and entertainment budget," which had more than enough funds to cover the expense. Moreover, Mr. Herrera was not given an opportunity to reimburse Zillow.

67. Over the years, Jordan had repeatedly ignored White executives' lavish spending if their sales were strong, as Mr. Herrera's were at this time. Yet again, he treated Mr. Herrera differently and terminated him instead.

## LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### Race-Based Termination in Violation of Section 1981, Title VII, and CADA

68. Plaintiff incorporates by reference all the preceding and following allegations.

69. Plaintiff is Hispanic and therefore belongs to a protected class.

70. Plaintiff was highly qualified for his job and maintained a spotless record.

71. Defendant terminated Plaintiff's employment based on his race.

72. Defendant's unlawful employment practices were intentional.

73. Defendant engaged in these unlawful practices with malice or reckless indifference to Plaintiff's federal- and state-protected civil rights.

74. Defendant's unlawful employment practices caused Plaintiff great financial

and emotional harm.

## SECOND CLAIM FOR RELIEF
### Race-Based Discrimination in Violation of Section 1981, Title VII, and CADA

75. Plaintiff incorporates by reference all the preceding and following allegations.

76. Defendant denied Plaintiff promotional opportunities for which he was qualified because of his race.

77. For example, Zillow denied Mr. Herrera promotions:

- to head a larger team within Zillow within Rentals in 2024, and
- to Director of Small Teams in Zillow Rentals.

78. Mr. Herrera was qualified for the promotions in which he had expressed an interest.

79. Zillow placed less qualified employees outside of Plaintiff's protected class into better-paying positions with more responsibilities.

80. Zillow also denied Mr. Herrera:

- Financial compensation associated with a Director title in 2022, and
- A merit pay increase in 2024.

81. Zillow denied Mr. Herrera promotional and higher pay opportunities based on his race.

## THIRD CLAIM FOR RELIEF
### Retaliation for Complaining about Race-Based Discrimination in Violation of Section 1981, Title VII, and CADA

82. Plaintiff incorporates by reference all the preceding and following allegations.

83. Plaintiff's repeated discrimination and retaliation complaints, from 2022 through March 2024, constituted protected activity.

84. Based on the available facts, Plaintiff believed subjectively and objectively that Zillow was discriminating against him based on his race and retaliating against him for his complaints.

85. Within about five weeks of his last discrimination and retaliation complaint, Zillow terminated Plaintiff.

86. Zillow terminated Plaintiff's employment for a pretextual reason.

87. Zillow's true reason for terminating Plaintiff's employment is to retaliate for his March 2024 and previous complaints of discrimination and retaliation.

WHEREFORE, Samuel Herrera respectfully requests that this Court enter judgment in his favor on his claims and award him the following relief:

   a. Compensatory damages, including, but not limited to, those for past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses;

   b. Punitive damages as allowed by law in an amount to be determined at trial;

   c. Actual economic and consequential damages arising out of Defendant's conduct;

   d. Declaratory relief and other appropriate equitable relief;

   e. Pre-judgment and post-judgment interest at the highest lawful rate;

   f. Reasonable attorney's fees and costs, including expert witness costs, as otherwise allowed by law;

   g. Any relief allowed by law or as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 23rd day of September 2025.

/s/ Diane S. King
Diane S. King
Marianna McLean
King Employment Law
1670 York Street
Denver, CO 80206
303-479-3997
king@kingemploymentlaw.com
mclean@kingemploymentlaw.com

*Attorneys for Plaintiff*